UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
RAMY SIDHOM,

Plaintiff,

-against-

COUNTY OF NASSAU, NASSAU COUNTY POLICE OFFICER RAMOS, in his individual and official capacities, NASSAU COUNTY POLICE OFFICER JOHN/JANE DOES #1-10 (fictitiously named), in their individual and official capacities, and NEW YORK STATE COURT OFFICER JOHN/JANE DOES #11-20 (fictitiously named), in their individual capacities,

Defendants.
------------------------------------------------------------------- X

**Docket No.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff RAMY SIDHOM ("Plaintiff"), by his attorneys, HORN WRIGHT, LLP, complaining of Defendants COUNTY OF NASSAU, NASSAU COUNTY POLICE OFFICER RAMOS, in his individual and official capacities, NASSAU COUNTY POLICE OFFICER JOHN/JANE DOES #1-10 (fictitiously named), in their individual and official capacities, and NEW YORK STATE COURT OFFICER JOHN/JANE DOES #11-20 (fictitiously named), in their individual capacities, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff RAMY SIDHOM seeks relief from Defendants COUNTY OF NASSAU, NASSAU COUNTY POLICE OFFICER RAMOS, in his individual and official capacities, NASSAU COUNTY POLICE OFFICER JOHN/JANE DOES #1-10 (fictitiously named), in their individual and official capacities, and NEW YORK STATE COURT OFFICER JOHN/JANE DOES #11-20 (fictitiously named), in their individual capacities, (collectively, "Defendants"), for committing acts under color of law and depriving Plaintiff of

rights secured under 42 U.S.C. § 1983 grounded in rights secured to him under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

2. Plaintiff alleges that Defendants, NASSAU COUNTY POLICE OFFICER RAMOS, in his individual and official capacities, NASSAU COUNTY POLICE OFFICER JOHN/JANE DOES #1-10 (fictitiously named), in their individual and official capacities, and NEW YORK STATE COURT OFFICER JOHN/JANE DOES #11-20 (fictitiously named), in their individual capacities, (collectively, "Individual Defendants") used excessive force and unlawfully searched Plaintiff. All acts were committed under the color of law and deprived Plaintiff of rights secured to him under the Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States.

3. Individual Defendants, without justification or any reason except an intent to deprive Plaintiff of his rights and knowledge that their conduct had the tacit authorization of Defendant COUNTY OF NASSAU, Nassau County Police Department, and New York State, assaulted and battered Plaintiff and/or conspired and permitted said assault and battery to occur. Said unlawful acts upon Plaintiff deprived him of his civil and Constitutional rights.

4. Plaintiff seeks damages, both compensatory and punitive, award of costs, disbursements, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

## JURISDICTION

5. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

## VENUE

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau, State of New York; the actual place of employment of the Individual Defendants is within the Eastern District of New York; and the County of Nassau, State of New York is within the jurisdiction of the Eastern District of New York.

## THE PARTIES

7. Plaintiff RAMY SIDHOM ("SIDHOM" and/or "Plaintiff") is a resident of the United States who lives within the Eastern District of New York.

8. Upon information and belief, at all relevant times described herein, Defendant COUNTY OF NASSAU ("COUNTY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

9. Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees, operated, maintained, and controlled the Nassau County Police Department ("NCPD"), including all supervising officers and police officers thereof.

10. Upon information and belief, at all relevant times described herein, NCPD is a subdivision and/or agency of Defendant COUNTY and has an office at 1490 Franklin Avenue, Mineola, New York 11501.

11. Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE OFFICER RAMOS ("RAMOS") is a police officer who is being sued in his individual and official capacities and is an employee of Defendant COUNTY and NCPD. At all relevant times described herein, RAMOS was acting under color of state law within

the scope of his employment as a police officer employed by Defendant COUNTY and NCPD, and works under the supervision, direction, and/or control of his supervisors in the NCPD.

12. Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE OFFICER JOHN/JANE DOES #1-10 (fictitiously named) ("DOES #1-10") are individuals and employees of Defendant COUNTY and NCPD with an actual place of employment within the County of Nassau, State of New York, who are being sued in their individual and official capacities. At all relevant times described herein, DOES #1-10 were acting under color of state law within the scope of their employment as Police Officers employed by Defendant COUNTY and NCPD, and work under the supervision, direction, and/or control of their supervisors in the NCPD.

13. Upon information and belief, at all relevant times described herein, Defendant NEW YORK STATE COURT OFFICER JOHN/JANE DOES #11-20 (fictitiously named) ("DOES #11-20") are individuals and employees of New York State with an actual place of employment within the County of Nassau, State of New York, who are being sued in their individual capacity. At all relevant times described herein, DOES #11-20 were acting under color of state law within the scope of their employment as New York State Court Officers employed by New York State, and work under the supervision, direction, and/or control of their supervisors in the New York Court Unified Court System.

## FACTUAL ALLEGATIONS

14. At all relevant times herein, Plaintiff was in custody of the NCPD.

15. At all relevant times, Plaintiff was compliant, cooperative, and posed no threat to himself or others.

16. On or about April 12, 2024, Plaintiff was present at Nassau County District Court, located at 99 Main Street, Hempstead, New York, for a court appearance.

17. Despite Plaintiff being fully cooperative and compliant, and posing no threat nor threatening to use violence, Plaintiff was unexpectedly and viciously attacked by Defendant RAMOS and/or DOES #1-10 and/or DOES #11-20.

18. While Court proceedings were going on, RAMOS attacked Plaintiff and forcefully threw Plaintiff onto the court room floor and proceeded to beat and assault SIDHOM. Upon information, Defendants DOES #1-10 and DOES 11-20 also joined RAMOS in assaulting SIDHOM.

19. During this assault, Individual Defendants viciously and repeatedly kicked, punched, and slammed Plaintiff to the hard tile floor using excessive and unreasonable force, all while Plaintiff was compliant and handcuffed.

20. The aforementioned assault and beating persisted despite Plaintiff's repeated pleas for Individual Defendants to stop, and despite Plaintiff having been compliant at all relevant times, not attempting to escape, and/or posing no threat and/or resistance to Individual Defendants.

21. Upon information and belief, despite observing that SIDHOM was seriously injured and in distress, Individual Defendants continued to use force against him rather than provide or summon medical assistance.

22. At some point, Individual Defendants dragged SIDHOM out of the courtroom and their savage attack continued.

23. Following each of the attacks, Plaintiff complained to Individual Defendants that he was in pain and required immediate medical attention. Plaintiff had visible injuries and was bleeding

24. Following each of the attacks, Plaintiff's requests for medical attention were ignored and, despite it being apparent that Plaintiff had suffered serious physical injuries, Plaintiff was denied medical attention by Individual Defendants.

25. When SIDHOM was finally brought back before the judge, the judge permitted SIDHOM to be released on his own recognizance after observing SIDHOM's visible injuries.

26. At all relevant times, Individual Defendants were acting under color of law.

27. On or about April 12, 2024, Defendant COUNTY and NCPD were obligated and owed a duty to Plaintiff to maintain, manage, operate, and control NCPD and the activities conducted by their agents and/or employees, including RAMOS and DOES #1-10, in a reasonably safe and prudent manner.

28. On or about April 12, 2024, New York State ("NYS") and New York State Unified Court System ("NYS UCS") were obligated and owed a duty to Plaintiff to maintain, manage, operate, and control DOES #11-20 and the activities conducted by their agents and/or employees in a reasonably safe and prudent manner.

29. Defendant COUNTY and NCPD, NYS, and NYS UCS had a duty to properly supervise and adequately train their agents, servants, and/or employees, including Individual Defendants, regarding the proper use of force and to comply with Constitutional standards, but have tolerated excessive force despite numerous complaints about violations by individuals such as Plaintiff.

30. At all relevant times, Defendants, each of them separately and in concert, engaged in acts or omissions which constituted deprivation of the Constitutional rights, privileges, and immunities of Plaintiff and, while these acts were carried out under color of law, Defendants had no justification or excuse in law and were instead gratuitous, illegal, improper, and unrelated to

any activity in which law enforcement or Corrections Officers may appropriately and legally engage in the course of protecting persons, detainees, prisoners, property, or ensure civil order.

31. At all relevant times Defendants, and each of them, had the power and duty to restrain the other Defendants and prevent them from violating the law and Plaintiff's rights by assaulting and injuring Plaintiff, and each of the Defendants failed and/or refused to perform that duty and failed to protect Plaintiff, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon Plaintiff, but each of the Defendants failed and refused to restrain the other Defendants and thereby became a party to unlawfully subjecting Plaintiff to harm and denial of basic rights.

32. Upon information and belief, all injuries are serious and permanent in nature as a result of the assault and beating.

33. The injuries Plaintiff suffered were caused solely by the conduct of Defendants and Plaintiff in no way contributed to or caused the injuries he suffered.

34. Defendants' intentional, reckless, or deliberately indifferent behavior caused Plaintiff conscious pain and suffering, permanent physical injuries, and emotional harm.

35. Plaintiff suffered serious and permanent injuries as a direct and proximate result of the deprivation of his Fourth, Eighth, and Fourteenth Amendment rights as a result of the acts of Defendants.

36. All the alleged acts, misdeeds, and omissions committed by Defendants described herein for which liability is claimed were done either intentionally, knowingly, or recklessly, and their proscribed conduct meets all of the standards for imposition of punitive damages.

37. Defendants knew and/or had reason to know and were aware of the substantial risk to the health and safety of Plaintiff and individuals like Plaintiff. Despite this knowledge, Defendants disregarded said risk.

38. At all relevant times mentioned in this Complaint, each of the Defendants had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of Plaintiff; each of the Defendants failed and/or refused to perform that duty and failed and/or refused to restrain the other Defendants, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon Plaintiff.

39. As a direct and proximate result of the acts of Defendants, the injuries and damages sustained by Plaintiff from the deprivation of his Fourth, Eighth, and Fourteenth Amendment rights include: injuries to his head, leg, and body; bruises; multiple scrapes and lacerations; severe pain; psychological anguish; permanent injury and disability; mental anguish; and emotional distress.

40. The conduct of Defendants was the proximate cause of Plaintiff's injuries.

41. The injuries suffered by Plaintiff are permanent in nature.

## COUNT I
## VIOLATION OF PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS FOR UNREASONABLE AND EXCESSIVE FORCE (§ 1983)
## (*Against Individual Defendants*)

42. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

43. The unlawful assault and battery of Plaintiff by Individual Defendants was conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of their employment by COUNTY and NCPD and/or NYS and NYS UCS.

44. Individual Defendants, with willful and malicious intent, using the actual and/or apparent authority of Defendant COUNTY and NCPD and/or NYS and NYS UCS, violently assaulted Plaintiff without valid justification for such excessive force.

45. Individual Defendants' aforesaid actions constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason.

46. Individual Defendants' actions were intentionally and recklessly done to intimidate and did cause Plaintiff physical and emotional distress.

47. The assault and battery of Plaintiff was an abuse of power, constituted violations of bodily integrity for no legitimate purpose within the meaning of the Fourth, Eighth, and Fourteenth Amendments, constituted a violation of Plaintiff's right to be free from unlawful force while detained pursuant to the Fourth, Eighth, and Fourteenth Amendments, and deprived Plaintiff of his liberty and right to be free from this type of physical attack.

48. The violation of Plaintiff's bodily integrity was unreasonable and without due process of law, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

49. As a proximate result of Individual Defendants' intentional and malicious actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## COUNT II
## VIOLATION OF PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHTS/VIOLATING PLAINTIFF'S BODILY INTEGRITY (§ 1983)
***(Against Individual Defendants)***

50. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

51. The harm to Plaintiff was foreseeable and a direct result of Individual Defendants' conduct in unlawfully assaulting Plaintiff without any legitimate basis or any other lawful justification.

52. Individual Defendants acted in conscious disregard of a great risk of serious harm to Plaintiff by unlawfully assaulting him, placing Plaintiff in substantial fear for his life and safety, and causing physical and emotional injuries to Plaintiff.

53. Individual Defendants' conduct was intentional, with deliberate indifference and/or recklessness.

54. Individual Defendants consciously disregarded a great risk that serious harm would result by unlawfully placing Plaintiff in a dangerous situation under color of state law that he otherwise would not have been subjected to but for Defendants' conduct.

55. Individual Defendants were aware and/or it was reasonably foreseeable that their conduct would cause injuries to Plaintiff.

56. Defendants used their authority to create an opportunity that otherwise would not have existed for harm to occur.

57. Defendants' conduct in permitting the assault and battery of Plaintiff constitutes conduct that shocks the conscience and was without any lawful or legitimate basis.

58. Defendants acted intentionally, with wanton or deliberate indifference and/or recklessness to Plaintiff's rights.

59. The aforesaid actions of Defendants constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason, and in violation of Plaintiff's substantive due process rights guaranteed by the Eighth and Fourteenth Amendments.

60. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## COUNT III
## VIOLATION OF PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS FOR FAILURE TO PROTECT/INTERVENE (§ 1983)
## (*Against Individual Defendants*)

61. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

62. Defendants knew that there was a strong likelihood of harm to Plaintiff, but failed to take reasonable measures to intervene and prevent the unlawful conduct of Individual Defendants, despite having opportunities to do so.

63. Upon information and belief, Defendants were on notice of Individual Defendants' violent propensities to use their status as Police Officers and/or Court Officers to unlawfully inflict harm on individuals.

64. Defendants knew that Individual Defendants had engaged in this conduct in the past by assaulting individuals, using the actual and/or apparent authority of NCPD to carry out their violent desires.

65. Upon information and belief, Defendants were on notice of Individual Defendants' violent propensity to use their status as Police Officers and/or Court Officers to further their violent desires.

66. Despite having such knowledge, Defendants failed to take any remedial or preventative measures to deter RAMOS, DOES #1-10, and/or DOES #11-20 from continuing to engage in official misconduct that violates the rights of the citizens they each swore to protect and serve.

67. Had Defendants intervened to stop the unlawful conduct of Individual Defendants before April 12, 2024, Plaintiff would not have been subjected to the events described herein.

68. As a result of Defendants' failure to protect and failure to intervene, Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights were violated.

69. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all

to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees

## COUNT IV
## FAILURE TO SUPERVISE AND FAILURE TO TRAIN (§ 1983)
## (*Against Defendant COUNTY*)

70. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

71. The unlawful assaulting of vulnerable individuals by Officers, including RAMOS and DOES #1-10, is and was foreseeable.

72. Defendant COUNTY and NCPD were responsible for supervising, overseeing, and controlling their subordinates within NCPD, including RAMOS and DOES #1-10.

73. Defendant County and NCPD had an express and/or implied duty to provide a reasonably safe environment for individuals, including Plaintiff. At a minimum, they had a duty to keep him from being unlawfully assaulted by their employees, including RAMOS and DOES #1-10, which was foreseeable based upon their past instances of misconduct, which were known to the senior officers and supervisors in NCPD.

74. In fact, it was well known throughout the community that multiple Police Officers, including RAMOS and DOES #1-10, were using their actual and/or apparent authority to assault vulnerable individuals without reason and without any legal basis.

75. Despite having this knowledge, Defendant COUNTY and NCPD failed to take any remedial measures to prevent foreseeable acts of abuse by RAMOS and DOES #1-10.

76. The countenancing of this behavior created an environment within NCPD wherein Police Officers were allowed to continue with their violent behavior, which led to the Constitutional rights of vulnerable citizens being violated for their desires, including Plaintiff.

77. Defendant COUNTY and NCPD intentionally failed to adequately supervise, control, oversee, train, and/or monitor RAMOS and DOES #1-10, who had histories of engaging in official misconduct, and failed to implement measures to prevent RAMOS and DOES #1-10 and other Police Officers from conspiring with each other to cover up their official misconduct.

78. Defendant COUNTY and NCPD intentionally failed to adequately supervise, control, oversee, train, and/or monitor RAMOS, DOES #1-10, and other Police Officers from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individuals, including Plaintiff.

79. Defendant COUNTY and NCPD negligently hired, retained, and/or supervised RAMOS and DOES #1-10 when they knew or should have known that they posed a threat of abuse to vulnerable individuals.

80. Defendant COUNTY and NCPD knew or should have known of RAMOS and DOES #1-10's violent propensities for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries, given the knowledge of other instances of abuse that predate April 12, 2024.

81. Defendant COUNTY and NCPD owed a duty of care to all persons, including Plaintiff, who were likely to come under the influence of RAMOS and DOES #1-10 in their roles as Police Officers, to ensure that RAMOS and DOES #1-10 did not abuse their authority as Police Officers to injure individuals by unlawfully assaulting, battering, and/or otherwise subjecting them to abuse for no lawful reason.

82. At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

83. Upon information and belief, Defendant COUNTY and NCPD were aware that there was a substantial likelihood that permitting RAMOS and DOES #1-10 to carry on their regular duties as Police Officers would deprive the individuals of their civil rights but failed to take adequate measures to resolve the wrong.

84. In fact, upon hearing the allegations, Defendant COUNTY and NCPD still failed to take any action and failed to terminate RAMOS and DOES #1-10's employment or title as Police Officers, essentially countenancing this behavior.

85. Defendant COUNTY, NCPD, and NCPD supervisors' failure and refusal to adequately investigate RAMOS and DOES #1-10's actions, acquiescence in RAMOS and DOES #1-10's conduct, failure to take any remedial action against Defendant Officers, allowing RAMOS and DOES #1-10 to remain employed as officers with COUNTY and NCPD, gross negligence in their supervision of RAMOS and DOES #1-10, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by RAMOS and DOES #1-10 and other Police Officers, subjects them to supervisory liability for the April 12, 2024 assault and battery of Plaintiff.

86. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all

to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees

**COUNT V**
**DENIAL AND FAILURE TO PROVIDE MEDICAL TREATMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS**
**(*Against All Defendants*)**

87. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

88. Defendants had an affirmative duty to provide and administer health and medical services to Plaintiff and other pre-trial detainees.

89. Defendants, as previously alleged, had a duty and obligation to provide Plaintiff and other pre-trial detainees reasonable and adequate health and medical services.

90. Defendant COUNTY, on information, had knowledge that there was no health care provided to pre-trail detainees such as Plaintiff.

91. On information, there was no health and medical care provided by Defendant COUNTY to individuals such as Plaintiff.

92. On information, the health and medical care provided by Defendants, or which they were responsible for providing, created an excessive risk to Plaintiff, and the harm to which Plaintiff was exposed was sufficiently serious as to implicate his Constitutional rights.

93. On information, Defendants knew that Plaintiff's physical injuries constituted a serious need for immediate, competent, and adequate medical care and treatment.

94. On information, Defendants knew of and ignored the aforesaid excessive risk to Plaintiff's health.

95. The denial of adequate medical care as aforesaid created a condition of urgency, where pain, emotional distress, disability, permanent injury, or death was likely.

96. Defendants' policies, practices, customs, actions, and failures to act constituted deliberate indifference to the serious medical needs of Plaintiff.

97. Defendants were deliberately indifferent to the serious medical needs of Plaintiff.

98. As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and suffering.

99. Defendants' conduct demonstrated reckless and/or callous indifference to the federally protected rights of Plaintiff.

100. As a direct and proximate result of the foregoing, Plaintiff was subjected to cruel and unusual punishment and denial of adequate medical care and treatment.

101. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries and permanent disability, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT VI**
**42 U.S.C. § 1983 – *Monell***
**(*Against Defendant COUNTY*)**

102. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

103. Upon information and belief, it was the custom, policy, and practice of COUNTY to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiff herein, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by Police Officers.

104. Employees of COUNTY, such as Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or punishment for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

105. By failing to supervise, train, and reprimand such Police Officers, COUNTY caused the injuries to Plaintiff through the actions and inactions of RAMOS and DOES #1-10.

106. Defendant COUNTY failed to adequately train its police officers and sergeants regarding the proper use of force, probable cause, and investigation to comply with Constitutional standards and has tolerated the use of excessive force, probable cause, and investigation by its police officers and sergeants despite a plethora of complaints from citizens of being subjected to Constitutional violations by police officers and sergeants.

107. Among the other conduct or failure to act by COUNTY which caused Plaintiff's injuries are the following:

(a) Failure to retrain and update training of its police officers and sergeants regarding the proper use of force, probable cause, and investigation of purported crimes under the Constitution of the United States, including police officers and sergeants who have been accused of excessive use of force, improper police procedures and tactics, and falsifying police records.

(b) In hiring and retaining incompetent police officers and sergeants who COUNTY and/or NCPD knew or should have known possessed aggressive propensities, lack of proper temperament, and inability to comprehend or abide by Constitutional principles.

(c) In failing to establish and implement meaningful procedures for discipling or re-training police officers and sergeants who have engaged in such misconduct, including police officers and sergeants who have been the subject of misconduct claims.

(d) In failing to implement adequate disciplinary policies to deter its police officers and sergeants from the use of excessive force, improper police procedures and tactics, and falsifying police records

108. COUNTY, by its policy making agents, servants, and employees, authorized and/or allowed the type of misconduct complained of herein to continue.

109. The conduct of the Individual Defendants was consistent with longstanding customs, practices, and usages of police officers and sergeants employed by COUNTY.

110. Upon information and belief, despite knowledge of such *de facto* policies and practices, the supervising and policy making officers and officials of the Police Department of COUNTY have not taken steps to terminate these policies and/or practices, have not disciplined individuals who engage in such practices or otherwise trained police officers and sergeants with regard to the Constitutional and statutory limits on the exercise of their authority, and have, instead,

condoned and ratified these customs, usages, and practices through their deliberate indifference to or disregard of the effect of said policies, customs, and practices upon the Constitutional rights upon persons within their respective jurisdictions.

111. By maintaining a *de facto* policy of automatic indemnification, COUNTY caused the injuries to Plaintiff through the actions and inactions of RAMOS and DOES #1-10.

112. Upon information and belief, this custom, policy, and practice of COUNTY to ignore complaints and/or widespread allegations of assault, battery, and other malfeasance against individuals by its Police Officers created an environment where foreseeable Constitutional violations by its Police Officers were rampant, including the violations of Plaintiff's Constitutional rights by RAMOS and DOES #1-10.

113. Upon information and belief, it was the custom, policy, and practice of COUNTY to blatantly ignore complaints and/or widespread allegations of assault, battery, and/or other malfeasance against individuals by its Police Officers in order to shield COUNTY from receiving any bad press that would be generated from an investigation of misconduct by its Police Officers.

114. COUNTY's failure to take action against RAMOS and DOES #1-10 involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

115. As authorized representatives of Defendant COUNTY, the Police Officers' conduct of threats of violence and acts of assault and battery, such as against Plaintiff, constituted a custom, policy, and practice which renders Defendant COUNTY liable to Plaintiff as a "Person" acting under the color of state law.

116. These customs, policies, and practices, which were enforced by Defendant COUNTY, were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

117. Had COUNTY investigated serious complaints of assault and/or widespread allegations of same prior to April 12, 2024, RAMOS and DOES #1-10 would not have been in a position to violate Plaintiff's Constitutional rights.

118. COUNTY is therefore liable for violations of Plaintiff's Constitutional rights as caused by RAMOS and DOES #1-10, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

119. That, by virtue of COUNTY's failure and refusal to adequately investigate RAMOS and DOES #1-10's actions, acquiescence in RAMOS and DOES #1-10's conduct, failure to take any remedial action against RAMOS and DOES #1-10, allowing RAMOS and DOES #1-10 to remain employed as officers with NCPD, disregard in its supervision of RAMOS and DOES #1-10, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by RAMOS and DOES #1-10, Defendant COUNTY, which employed these Police Officers and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 US. 658 (1978).

120. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental

anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees.

## JURY DEMAND

121. Plaintiff demands a Trial by Jury of all causes of action so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff RAMY SIDHOM respectfully requests judgment against Defendants COUNTY OF NASSAU, NASSAU COUNTY POLICE OFFICER RAMOS, in his individual and official capacities, NASSAU COUNTY POLICE OFFICER JOHN/JANE DOES #1-10 (fictitiously named), in their individual and official capacities, and NEW YORK STATE COURT OFFICER JOHN/JANE DOES #11-20 (fictitiously named), in their individual capacity, as follows:

A. Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

B. Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

C. Under the Third Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

D. Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees;

E. Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

F. Under the Sixth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees;

G. Costs and disbursements of this matter; and

H. Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
October 7, 2026

Respectfully submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiff*

By: /s/*Sheetal Paul*
Sheetal Paul
400 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: 516.355.9696
shp@hornwright.com